**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**CLIRIM GASHI,**

     *Petitioner*,

**v.**                                    **Case No. 5:26-CV-0994-JKP**

**MIGUEL VERGARA, et al.,**

     *Respondents*.

**ORDER GRANTING**
**PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is a Petition for Writ of Habeas Corpus (ECF No. 1) filed pursuant to 28 U.S.C. § 2241. Respondents (sometimes referred to as "the Government") have filed a response and Petitioner has filed a reply. The petition is ready for ruling. After reviewing the briefing, provided evidence, and applicable law, the Court grants the petition.

**I. BACKGROUND**

Petitioner, a native and citizen of Kosovo, entered the United States at a point of entry on January 24, 2023, seeking refuge from political persecution. After an asylum officer found that Petitioner had demonstrated a credible fear of persecution or torture, the Government issued a Notice to Appear on February 24, 2023. The NTA classified Petitioner as "an alien present in the United States who has not been admitted or paroled"; placed him into full removal proceedings under § 240 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1229a; and charged him as subject to removal as an immigrant lacking valid documentation under INA § 212(a)(7)(A)(i)(I) (codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I)) and as a noncitizen "present in the United States without being admitted or paroled or who arrived in the United States at any time or place other than as designated by the Attorney General" under INA § 212(a)(6)(A)(i) (codified at 8 U.S.C. § 1182(a)(6)(A)(i)). The NTA directed Petitioner to appear on March 27, 2023, to show

why he should not be removed from the United States.

After six months of detention, the Government released Petitioner subject to monthly check-ins and participation in an Intensive Supervision Appearance Program ("ISAP"). Petitioner obtained a work permit and social security number for employment purposes. He diligently attended all immigration check-ins and complied with the ISAP requirements that included weekly check-ins from approximately February 2023 until May 2025. He married a citizen of the United States. He has resided in the United States and built a life here since his release into the country in 2023. He has no criminal history and has complied with the terms of his release. There is no indication that he is either a flight risk or a danger to the community.

In April 2025, an immigration judge denied Petitioner's claim for asylum. Petitioner immediately and timely appealed—an appeal that remains pending. Nevertheless, immigration authorities detained him in May 2025, without warning, explanation, judicial warrant, or order of removal. He contends that the Government has violated his Fifth Amendment substantive and procedural due process rights. He seeks immediate release from his detention or a bond hearing.

In their response to the Petition, Respondents assert that Petitioner's detention is mandated by 8 U.S.C. § 1225(b)(2). They contend that Petitioner has not exhausted her administrative remedies. They do not assert any jurisdictional impediments applicable to this case. They instead argue that as applied to Petitioner, § 1225(b) comports with due process.

## II. JURISDICTION

Jurisdiction is always an initial consideration because it concerns the Court's power over a case. *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). They "must presume that a suit lies outside this limited

jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

Several sections of the INA, codified at 8 U.S.C ch. 12 § 1101 et seq., curtail the jurisdiction of federal district courts in immigration cases. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018). Respondents do not invoke any specific argument as to this Court's jurisdiction. This Court, moreover, has rejected jurisdictional arguments in similar cases. *See*, *e.g.*, *Davila Mercado v. Lyons*, No. 5:25-CV-1623-JKP, 2025 WL 3654268, at *2–5 (W.D. Tex. Dec. 11, 2025) (rejecting arguments under 8 U.S.C. §§ 1225(b)(4), 1252(b)(9), and 1252(g)); *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-0773-JKP, 2025 WL 2976923, at *2 (W.D. Tex. Oct. 21, 2025) (rejecting arguments under 8 U.S.C. § 1252(g), § 1252(a)(5), § 1252(b)(9), and § 1226(e)). Jurisdiction does not preclude review of the habeas claims raised in this case.

### III. ADMINISTRATIVE EXAUSTION

Respondents argue that Petitioner must exhaust administrative remedies before pursuing habeas relief. As this Court recently discussed in *Longoria Mendoza v. Noem*, ___ F. Supp. 3d ___, ___, No 5:26-CV-0728-JKP, 2026 WL 809441, at *2 (W.D. Tex. Feb. 26, 2026), courts may excuse an exhaustion requirement, and the instant petition does not present an issue with exhaustion. The Court sees no need to further consider the alleged failure to exhaust.

### IV. LEGAL STANDARD

The Supreme Court has referred to the "Great Writ" as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement" and "[r]eceived into our own law in the colonial period." *Fay v. Noia*, 372 U.S. 391, 400 (1963), *overruled in part on other grounds*, *Wainwright v. Sykes*, 433 U.S. 72 (1977), and *abrogated in part on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991). The importance of this Great Writ was not lost on the Justices of the Civil Rights

era who recognized that the writ's

> function has been to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release. Thus there is nothing novel in the fact that today habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office.

*Id*. at 401–02.

"Only in the rarest of circumstances has Congress seen fit to suspend the writ." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). Moreover, "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Id*. (citing U.S. Const., Art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it")). Indeed, absent suspension, it is available to "challenge the legality of their detention" by "noncitizens detained by our Government in territory over which another country maintains *de jure* sovereignty," such as Guantanamo Bay. *Boumediene v. Bush*, 553 U.S. 723, 770 (2008). The Great Writ remains "a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (citing *Imm. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001), *superseded by statute on other grounds as stated in Nasrallah v. Barr*, 590 U.S. 573, 580 (2020)).

The fundamental protection of habeas corpus applies to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Indeed, the Supreme Court in *Zadvydas* noted:

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

*Id.* at 693 (citations omitted). This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Id.*

Habeas petitioners must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696 (S.D. Tex. 2025) (quoting 28 U.S.C. § 2241(c)(3)); *accord Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam) (recognizing that habeas relief cannot "be had absent [an] allegation" that the petitioner "has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States"). They "bear[] the burden of proving that [they are] being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [this] burden of proof by a preponderance of the evidence." *Villanueva*, 801 F. Supp. 3d at 696 (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). Courts "considering a habeas petition must 'determine the facts and dispose of the matter as law and justice require.'" *Id.* at 697 (quoting 28 U.S.C. § 2243).

## V. ANALYSIS

This Court recently issued an order granting habeas relief to a petitioner who had demonstrated a procedural due process violation. *See Longoria Mendoza v. Noem*, No 5:26-CV-0728-JKP (W.D. Tex. Feb. 26, 2026). While there are differences between this case and *Longoria Mendoza*, none warrant a different result.

For the reasons stated in *Longoria Mendoza,* the recent decision of the Fifth Circuit in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) precludes statutory claims premised on 8 U.S.C. § 1225(b) but does not preclude constitutional claims. *See Longoria Mendoza*, No 5:26-CV-0728-JKP, unpub. order at 7–9.

### A. Earlier Due Process Cases

An early decision out of El Paso focused on the merits of the petitioner's procedural due

process claim based on detention without an individualized bond hearing. *See Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 681–87 (W.D. Tex. 2025). In doing so, it rejected the Government's reliance on *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 140 (2020) by distinguishing the case in two important respects: (1) *Thuraissigiam* addressed removability or deportability rather than mandatory detention under 8 U.S.C. § 1225(b) and (2) the petitioner in *Thuraissigiam* did not have a significant presence in the United States, whereas the petitioner before the El Paso court lived in the United States for three years and "built a life here" after being "released on his own recognizance two days" following his initial detainment "shortly after entering the country." *See* 801 F. Supp. 3d at 681–85. In a nutshell, the court found that the petitioner could pursue his due process claim because the petitioner "challenge[d] his detention, not his deportability" and "because he was detained after years of presence in the United States, rather than on the threshold of initial entry." *Id*. at 685. The undersigned has specifically agreed with and essentially followed *Lopez-Arevelo*. *See Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *7–10 (W.D. Tex. Oct. 21, 2025).

**B. Merits of Due Process Claim**

With *Thuraissigiam* not posing an obstacle to the assertion of a due process claim, the Court turns to the merits of such a claim. Under the Due Process Clause of the Fifth Amendment, "[n]o person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Further, the Supreme Court has long recognized "that the Fifth Amendment entitles aliens to due process of law" in the context of removal proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (sometimes referred to as *The Japanese Immigrant Case*)); *accord Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per

6

curiam).

"Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950) (addressing due process claim under the Fourteenth Amendment). "Given the undeniable 'textual parallel between the Fifth and Fourteenth Amendments' courts 'understandably construe[ ] 'due process of law' to mean the same thing under the Fifth and Fourteenth Amendments alike.'" *C.M. v. United States*, 672 F. Supp. 3d 288, 342 (W.D. Tex. 2023) (quoting *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 243 (5th Cir. 2022) (Ho, J., concurring)).

The circumstances and nature of a given case may affect various aspects of the due process analysis. The analysis may differ significantly depending on the location of a noncitizen's encounter with immigration authorities—whether at the border or in close proximity thereto versus within the interior of the United States. It may be affected on whether the noncitizen has had prior encounters with immigration authorities and, if so, whether the noncitizen had been granted some sort of release previously. Immigration authorities, moreover, may release a noncitizen from detention in several ways—through various forms of parole, an order of supervision, or even on the noncitizen's own recognizance. Whether or not re-detention is at issue, the life that the noncitizen has built and developed within the United States impacts the due process analysis.

Once a noncitizen has been provided a pathway for release and entry into the United States subject to whatever terms are imposed, the release may create a cognizable liberty interest protected by the Fifth Amendment. *See, e.g., Zhu v. Genalo*, 798 F. Supp. 3d 400, 408 (S.D.N.Y. 2025). Not only do criminal parolees have a liberty interest "that parole will be revoked only if [the parolee] fails to live up to the parole conditions," *Morrissey v. Brewer*, 408 U.S. 471, 482

(1972), but civil detention further limits the circumstances justifying detention without violating due process, *see Zadvydas*, 533 U.S. at 690.

Due process protection remains even if government authorities have discretion to revoke supervision. *Zhu*, 798 F. Supp. 3d at 408. Detention without notice or explanation as required by regulation likewise "involves Petitioner's protected interest in his continued liberty." *Id*. This differs from a challenge to the general discretionary authority that might be available to revoke the release. *Id*.

Further, even in circumstances lacking a prior detention, release, and re-detention, noncitizens already in the country who have "established a life here—albeit without authorization," possess "a strong liberty interest in their freedom from detention." *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at \*4 (W.D. Tex. Oct. 21, 2025). This is "consistent with the longstanding principle that due process applies to those who are present in the interior of the United States, regardless of their citizenship status." *Id*.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey*, 408 U.S. at 482. The flexibility of due process "calls for such procedural protections as the particular situation demands." *Id*. This "does not mean that judges are at large to apply it to any and all relationships." *Id*. Instead, the flexibility of due process lies "in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Id*. Supreme Court cases "underscore the truism that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (cleaned up). Thus, "identification of the specific dictates of due process generally requires consideration of three distinct factors." *See id.* at 335. As succinctly stated in *Mathews*, the three factors are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*

Whether the Government has previously released an individual into the community and later seeks to re-detain that person, or whether the individual within the United States has simply established a life here, procedural due process requires an individualized assessment consistent with the framework articulated in *Mathews*. Courts addressing the merits of an asserted procedural due process claim apply the three-part *Mathews* test. *See*, *e.g.*, *Lopez-Arevelo*, 801 F. Supp. 3d at 685; *Hernandez-Fernandez*, 2025 WL 2976923, at *8–10.

In the immigration detention context involving noncitizens with a substantial presence in the United States who have not received any individualized assessment of flight risk or dangerousness, each of the three factors—affected private interest; risks of erroneous deprivation, including "the probable value, if any of additional or substitute procedural safeguards"; and the Government's interest—support finding that the noncitizen has been denied procedural due process. *See*, *e.g.*, *Martinez*, 2025 WL 2965859, at *4–5. Even in cases where there has been a re-detention of a non-citizen after such person had received or effectively received the individualized assessment of flight risk and dangerousness, courts may approach the circumstances the same, with the same results from the *Mathews* test. *See*, *e.g.*, *Lopez-Arevelo*, 801 F. Supp. 3d at 674–75, 685–87 (addressing due process violation in context of a non-citizen who first encountered immigration authorities on the day of entry, applied for asylum and withholding of removal, and was released for three years before ICE arrested him after a hearing connected to his removal proceedings); *Hernandez-Fernandez*, 2025 WL 2976923, at *8–10 (addressing due process violation in context of a non-citizen who first encountered immigration authorities soon after entry, was released two days

after entry on an Order of Release on Recognizance, and remained on release for three years before ICE arrested him at a routine check-in appointment). Notably, the re-detention context also presents a due process claim when the Government revokes release without notice or explanation. *See*, *e.g.*, *Zhu*, 798 F. Supp. 3d at 408.

There is no reason to overdo the analysis on the *Mathews* factors. No one can reasonably question that freedom from physical detention is one of the most sacred and elemental of liberty interests.

Further, when a noncitizen was previously released, which in and of itself reflects a determination that the individual is neither a flight risk nor a danger to the community, there is "a very high risk of erroneous deprivation of liberty" absent an individualized custody determination. *Cruz-Reyes v. Bondi*, No. 5:26-CV-60, 2026 WL 332315, at *7 (S.D. Tex. Feb. 3, 2026). "Without an individualized hearing, there is substantial risk that noncitizens with a substantial presence in the United States who pose neither flight risk nor danger to the community will be detained. An individualized assessment before an immigration judge substantially reduces this risk." *Aliaga Zamora v. Bondi*, No. SA-26-CA-00447-XR, 2026 WL 693054, at *13 (W.D. Tex. Mar. 10, 2026). Such an individualized hearing "ensures the purpose of detention is not punitive." *Id*. When the Government has already released the Petitioner "into the interior," it "has already concluded that he does not present a flight or security risk." *Id*. Absent "evidence of a change in the individualized circumstances, there is no reason to believe that re-detention serves any permissible purpose of confinement." *Id*.

In the re-detention context, "the almost nonexistent procedural protections provided to Petitioner markedly increased the risk of an erroneous deprivation of his private liberty interests, including whether the revocation determination was made by an authorized person." *Zhu*, 798 F. Supp. 3d at 415 n.4 (cleaned up). And in that same context, "the Government's interests,

10

presumably in effectively carrying out orders of removal, are legitimate, but would not be undercut by additional procedural safeguards as minimal as notice and an informal interview." *Id*.

Similarly, a substantial risk of erroneous deprivation of liberty exists when the Government detains a noncitizen without bond who was arrested within the United States and lacks any prior release by immigration authorities, but who has established a life here in the United States. *See Martinez*, 2025 WL 2965859, at *4.

In this case, Petitioner lived in the United States following his release in 2023. Between his release and his re-detention in May 2025, he established a life here in the United States, including marrying a citizen of the United States. While this timeframe is shorter than the three years presented in *Hernandez-Fernandez*, it may suffice to establish a significant presence that requires due process protection. The circumstances of this case, moreover, include a prior encounter with immigration authorities who determined that Petitioner should be released into the United States. Although Petitioner complied with the terms of his active release, the Government arrested and detained him in May 2025 without notice, cause, a judicial warrant, or even an order of removal.

Petitioner's release into the United States on parole provided him a right to due process protection in the termination of that release. Under the facts here, when immigration authorities detained Petitioner in May 2025 without notice or explanation, they violated his due process rights. Nothing indicates that Respondents applied their internal policies or regulations for terminating his release. In addition, once Respondents detained Petitioner following the termination of his release without notice, they provided no individualized hearing that would substantially reduce the risk of an erroneous deprivation of Petitioner's due process rights.

To counter Petitioner's due process claim, Respondents first rely on *Thuraissigiam*. Second, they argue that in *Buenrostro-Mendez*, the Fifth Circuit found that *Zadvydas* did not apply to detainees who received due process through removal proceedings. Third, district courts around the

11

country have dismissed due process claims under similar facts. The above analysis of this Court, however, demonstrates the validity of the asserted due process claim. To the extent another district court has found otherwise, this Court respectfully disagrees.

This Court, furthermore, agrees that when a noncitizen is detained while a "grant of humanitarian parole was still valid," the "detention is unlawful." *Aldana v. Collins*, ___ F. Supp. 3d ___, ___, No. 1:26-CV-335-RP, 2026 WL 673827, at *4 (W.D. Tex. Mar. 9, 2026). Such "detention without any notice or an individualized assessment deprives her of the constitutional right to procedural due process under the Fifth Amendment of the United States Constitution." *Camacho-Gutierrez v. Thompson*, No. 5:25-CV-01876-MA, 2026 WL 195758, at *5 (W.D. Tex. Jan. 16, 2026). Further, when a noncitizen has been "paroled and released into the country, where she has been living at liberty for over two years," the Government "may not revoke that liberty without an individualized determination of the need to do so," even when the noncitizen's "parole has expired or been terminated." *Marceau v. Noem*, EP-26-CV-237-KC, 2026 WL 368953, at *1 (W.D. Tex. Feb. 9, 2026); *accord Piurbeev v. Rose*, No. CV 26-910, 2026 WL 499907, at *3 (E.D. Pa. Feb. 23, 2026) (finding due process violation even when noncitizen was not detained until two years after parole had ended).

Even if a petitioner is released on his own recognizance rather than on humanitarian parole, the same analysis applies. Section 1226(a)(2)(B) of Title 8 of the United States Code allows release on "conditional parole." An Order of Recognizance is a form of such parole. *See Cruz-Miguel v. Holder*, 650 F.3d 189, 191 (2d Cir. 2011) (discussing § 1226 and release on "own recognizance); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."); *Ramirez-Gavilan v. Collins*, ___ F. Supp. 3d ___, ___, No. 1:25-CV-2052-RP, 2026 WL 274705, at *1 (W.D. Tex. Jan. 17, 2026) (noting that the petitioner had been "released under

12

his own recognizance, seemingly as a form of 'conditional parole' under 8 U.S.C. § 1226").

Under the facts and circumstances of this case, the Court finds that Petitioner is entitled to habeas relief based upon his Fifth Amendment procedural due process claim, his detention is unlawful, and habeas relief is proper.

## C. Other Matters

Although Petitioner seeks attorney fees and invokes jurisdiction under 28 U.S.C. §§ 1331 and 2241, the Court treats the instant action solely as a habeas action under § 2241. Petitioner does not specifically seek any non-habeas relief and has not paid the required filing fee for any non-habeas claim. "The payment of the $5 habeas filing fee relegates this action to habeas relief only. One cannot pay the minimal habeas fee and pursue non-habeas relief." *Ndudzi v. Castro*, No. SA-20-CV-0492-JKP, 2020 WL 3317107, at *2 (W.D. Tex. June 18, 2020). Because fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, are not available in habeas corpus proceedings like this one, *see Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023), the Court denies any request for fees in this case.

## D. Remedy

Petitioner's immediate release is the proper habeas remedy for violating Petitioner's due process rights in revoking his release without notice. *See Zhu*, 798 F. Supp. 3d at 415. Further, as fully explained and explored in *Longoria Mendoza v. Noem*, No 5:26-CV-0728-JKP (W.D. Tex. Feb. 26, 2026), in general, the proper remedy for a due process violation is for Respondents to release Petitioner from his detention. The Court finds no need to revisit the matter. "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

### VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Habeas Corpus (ECF No.

13

1). It is **ORDERED** that:

1. **On or before May 13, 2026**, Respondents shall **RELEASE** Petitioner Clirim Gashi from custody to a public location, under conditions no more restrictive than those in place before the detention at issue.

2. Respondents must **NOTIFY** Petitioner's counsel of the exact location and exact time of release as soon as practicable and no less than two hours before release.

3. Any possible or anticipated removal or transfer of Petitioner under this present detention is **PROHIBITED**.

4. Respondents shall **FILE** a Status report **no later than May 14, 2026**, confirming that Petitioner has been released. If counsel for Petitioner disagrees with any aspect of the filed Status Report, counsel may file a separate Status Report.

A final judgment will be issued separately.

**IT IS SO ORDERED this 11th day of May 2026.**

_____
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**